Opinion of the Court.
THE plaintiff in error obtained two judgments at law against the defendant, the one for about two hundred dollars, in the circuit court, and the other for forty-five dollars, before a justice of the peace. To *134 be relieved against these judgments, the defendant in error filed this bill, alleging that both the notes on which the judgments at law were founded, were given for a gaming consideration, or for money lent to play with at unlawful games of cards; that he had played cards with a certain person, named Long, and that the plaintiff in error was a partner with Long in what was won, although Long was the only one who played, and won the sum of four hundred dollars, the plaintiff in error being present and privy to the whole transaction ; that a few days afterwards, not having paid the four hundred dollars, he met with both Lyon, the plaintiff in error, and Long, on the road, when Long informed him that he, Long, was about to transfer to the plaintiff in error the demand; which he, the defendant in error, declined paying; whereupon Long proposed, if the defendant would give the plaintiff his note for two hundred dollars, it would satisfy him. This note the defendant gave, and it is the same on which the first judgment was founded. He further alleges, that at the time and place of play, the plaintiff in errors loaned him forty-five dollars, to play with, and for no other purpose, and for this the small note was given. He further alleges, that he was unable to defend himself at law, because he knew of no witness who could prove the defence, and that the matter rested solely in the breasts of the plaintiff in error and Long, and that Long has left the state, and he, the defendant in error, knew not where he had gone, and that a discovery from them was his only mode of relief. He obtained an injunction, and prayed for general relief.
Statement of the case.
The plaintiff in error admits, by his answer, that he was present when Long won the four hundred dollars ; but could not tell whether the money was won fairly or otherwise. He utterly denies all partnership in the gaming, or participation in the profits. He admits meeting the defendant in error on the road, in company with Long, and that Long was then going to the house of the defendant in error, for the purpose of getting the four hundred dollars ; that he, the plaintiff in error, was about to sell a horse to said Long, of considerable value, and was going with Long, for the purpose of knowing whether the defendant in error was willing to pay him two hundred dollars, the price of the horse, if he should sell him ; that the defendant *135 in error agreed to pay Long the whole, if he would wait, and executed his note for two hundred dollar, to him, the plaintiff in error, being the price of the horse, which is the same note on which the largest judgment is obtained, and the horse was accordingly delivered to Long. As to the note of forty-five dollars, he denies, positively, that he lent thirty thereof, in or near any gaming room; but in the street, at the request of the defendant in error, not knowing for what purpose, or that it was intended to be employed in gaming. The remaining fifteen dollars of the small note, he admits were lent in the gaming room, where the defendant in error was playing.
Our acts of assembly make void contracts to restore money lent at the time and place of gaming; but give no action to recover it back if paid.
Prior to the passage of these acts of assembly, courts of equity did not sustain bills to rescind contracts for the payment of money so lent.
It seem, that a man who has borrowed money at the gaming table, and given his note for the re-payment of it must defend himself at law, if he means to rely on the act at all.
*135 The court below perpetuated the injunction, as to the whole of both judgments, and the defendant below has prosecuted this writ of error.
1. We cannot perceive any thing in the record, which will support the decree of the court, as to the smaller judgment. As to thirty dollars of it, the denial of the answer is positive, that it was not lent, either at the time or place of play ; and with this, the proof agrees. One witness deposes, that he saw money pass between them on the street, in the evening previous to the night of gaming; but how much, or for what purpose, he did not know; and this is all the evidence touching that matter. On no principle, then, can the thirty dollars be withheld. As to the remaining fifteen, it is admitted that it was lent as charged in the bill. The question here arises, is money lent to play with, to be considered on the same footing with money won, The statutes relative to gaming in this state, do make contracts to restore money lent at the time and place of play, equally void, with those engaging to pay the money won; but the same statutes give no remedy to recover such money back, if paid ; nor is the jurisdiction of the chancellor in the same manner extended to the former case. Equity did often relieve against gaming contracts, previous to any legislation on the subject; but we have found no case where equity, at that period, rescinded contracts to restore money lent for the purposes of gaming. Although the person so lending, may furnish the means to the borrower, of exercising his extravagance and folly, and so far may be said to be particeps criminis; yet he is not equally guilty, in supplying, from motives of acc *136 ommodation merely, the funds which the other intends to use imprudently. As the plaintiff in error has now the advantage at law, where defence might have been made, and may in equity and good conscience receive and retain the fifteen dollars, we see no principle that will prevent his recovering it. The decree Perpetuating the injunction on the last judgment, is, therefore, erroneous.
An example of a defence by an answer in chancery, sufficiently not responsive to be available.
2. As to the judgment for the sum of two hundred dollars, if the fact stated by the plaintiff in error, that the note was given to him for a horse, to pay Long, must taken as true, the propriety of the relief granted would be very doubtful. But the complainant, in his bill, has said nothing with regard to the horse sold. The answer, therefore, in this respect, is not in response to the bill; but states other facts, by way of avoidance. Of course, it was incumbent on the plaintiff in error to prove them. This he has failed to do. One or two witnesses state something relative to the horse; but, on a careful inspection of their testimony, they, on that point only relate the statements of the plaintiff in error himself, and not those of the defendant. From one or two interrogatories put to the witnesses by the defendant in error, it may be faintly inferred, that a horse was somehow blended with the transaction. These interrogatories, however, may be explained more rationally, by supposing the defendant in error to allude to the statements of the plaintiff himself, which the witnesses had previously detailed. We cannot, therefore, find the fact substantiated by proof, and the relief was, therefore, properly granted, as to this judgment.
It is assigned for error, that the court erred in dismissing the bill as to Long, and that he ought to have been before the court, ere the relief was granted.
It is true, Long is named as a defendant to the bill ; but no proceedings, by process or publication, appear to have been had against him. Without process, he was no party ; and, of course, the decree dismissing the bill as to him, was both useless and harmless, unless he was a necessary party and ought to have been before the court at the date of the decree. No statement in the bill or answer, shows Long to have been so concerned in interest, as to make him a necessary party, before relief was granted. The plaintiff in error *137 held the legal title to the notes and judgments. One of them originated through the gaming of Long; but after the defendant in error executed his note to the plaintiff, no certain responsibility is shown to rest upon Long, unless the plaintiff in error should recover the note, and the defendant should claim redress against Long, by a decree to refund ; which could not have been granted, according to the principles recognized by this court in the cases of Downs vs. Quarles, and Same vs. Bohannon, decided at the fall term 1821.
As the decree, however, is deemed erroneous, in granting relief against the smaller judgment, with its interest, it must be reversed, and the cause be remanded, with directions there to enter a decree accordant with this opinion.